# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI COLLEEN NELSON, | Case No. 1:21-cv-01791-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I.   INTRODUCTION

Plaintiff Vicki Colleen Nelson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   FACTUAL BACKGROUND

On March 1, 2019, Plaintiff protectively filed an application for DIB payments, alleging she became disabled on December 4, 2018, due to a neck fusion, thoracic fusion, nerve damage,

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10.)

degenerative disk disease, low back degeneration, depression, knee degeneration, and severe right rib pain. (Administrative Record ("AR") 19, 21, 22, 62, 76, 92, 220–22, 252–53, 261, 295, 307.) Plaintiff was born on May 9, 1962, and was 56 years old on the alleged onset date. (AR 62, 76, 92, 261, 295, 307.) She has at least a high school education and is able to communicate in English. (AR 40, 80, 95, 251, 253.) Plaintiff has past work as a scheduler in a hospital. (AR 40–41, 335, 340.)

**A.    Relevant Medical Evidence[2]**

In 2009 and 2016, Plaintiff underwent a cervical and thoracic fusion, and had a subsequent hardware removal in 2017. (AR 417, 2029, 2338–39.) In January 2018, Plaintiff complained of lower back pain bilaterally radiating to her lower extremities. (AR 2377.) She was tearful and had "excruciating pain." (AR 2378.)

Plaintiff complained of pain in her neck bilaterally, upper back, mid-back, left upper extremity, right upper extremity, and lower back bilaterally in February 2018. (AR 2364.) A physical examination performed that month showed restricted range in Plaintiff's lumbar spine, a positive straight leg raising test, and decreased lower extremity strength. (AR 2369.) Plaintiff was diagnosed with lumbar radiculopathy. (AR 2369.) It was noted that she "cannot stand for long periods due to the pain," "has difficulty doing activities that involve bending due to the pain," and that the "pain is affecting her ability to ambulate." (AR 2370.) Plaintiff's spinal cord stimulator was reprogrammed and she was prescribed opioid medication for pain. (AR 2371.)

In November 2018, Plaintiff presented with mid-back and right rib pain. (AR 417.) She reported using a spinal cord stimulator but that it "does not really help." (AR 417.) The provider changed the opioid pain medication and recommended Plaintiff for a chronic pain program. (AR 419–20.) A CT of Plaintiff's thoracic spine revealed moderate degenerative change and a stimulator lead located within the spinal canal and subcutaneous tissues of the upper back. (AR 1993.)

In May 2019, Plaintiff underwent a comprehensive orthopedic evaluation with Dale H. Van Kirk, M.D. (AR 502–507.) Plaintiff complained of neck and thoracolumbar pain. (AR 502.) Dr. Van Kirk noted the neck pain and thoracolumbar pain is the main physical reason why Plaintiff is

---

[2] As Plaintiff's assertion of error is limited to the ALJ's consideration of Plaintiff's subjective complains of pain, only evidence relevant to these arguments is set forth below.

not gainfully employed.  (AR 503.)  She reported she can stand and walk for about ten minutes and can sit for about 20 minutes, and uses a cane "virtually all [of] the time" so that she does not fall. (AR 503.)  Dr. Van Kirk observed that Plaintiff "does have a moderate limp favoring the right lower extremity because of pain in the lower back when she bears weight."  (AR 504.)  Plaintiff's Romberg test was normal, her tandem talking with one foot in front of the other was satisfactory, she could get up on her toes and heels, and had normal heel-toe gait pattern.  (AR 504.)  Dr. Van Kirk noted that Plaintiff was able to squat about halfway down but could go no further because of chronic lower back pain, and that she relies on her cane when she is walking.  (AR 504.)

Dr. Van Kirk found that Plaintiff had some decreased range of motion in her lumbar spine, but was able to bend over to within one foot of touching the floor with her long fingers.  (AR 504.) Plaintiff's straight leg raising test was limited because of chronic thoracolumbar pain.  (AR 505.) Dr. Van Kirk noted Plaintiff's motor strength and sensation was normal, her deep tendon reflexes were bilaterally equal, with her patella reflexes at "1+/4."  (AR 505–506.)  No "ankle jerks" were detected on either side.  (AR 506.)

Dr. Van Kirk diagnosed Plaintiff with "[s]tatus post anterior cervical decompression and fusion with slight residual pain in the neck area" and "[s]tatus post thoracic fusion."  (AR 506.)  Dr. Van Kirk concluded that Plaintiff was limited to (1) standing or walking four cumulative hours out of an eight-hour day, with breaks for rest and use of her cane for ambulation; (2) lifting and carrying ten pounds frequently and 20 pounds occasionally; and (3) occasional postural activities.  (AR 506.) Dr. Van Kirk found no limitations on sitting or manipulative activity, but that she is precluded from working in an extremely cold or damp environment or at unprotected heights.  (AR 506–07.)

Plaintiff reported diffuse thoracolumbar pain and right lower rib pain in October 2019.  (AR 2397.)  She reported that the removal of her fusion hardware in 2017 "did not improve her thoracic pain."  (AR 2397.)  Prior to that, Plaintiff had received thoracic epidurals "with also not much relief." (AR 2397.)

In December 2019, Plaintiff complained of chronic rib and low back pain, and reported that lying down is the "only real relief."  (AR 887.)  She uses a cane, but it "aggravates" her right rib pain "somewhat" so she "only uses it when she really needs it."  (AR 887.)  She was diagnosed with

3

chronic low back pain and "intercostal neuralgia." (AR 888.)

Plaintiff presented with right knee pain in May 2020. (AR 1834–35.) An x-ray of her knee showed moderate right knee osteoarthropathy. (AR 1855.) Plaintiff requested bilateral injections in both knees in October 2020. (AR 2726.) In November 2020, Plaintiff complained of pain in her right knee that was interfering with her activities of daily living. (AR 2729.) She was given a cortisone shot. (AR 2729–30.) That same month, Plaintiff's knee x-ray showed moderate arthritis. (AR 2678–79.)

Plaintiff's opioid medication was refilled in March 2021. (AR 1949.) In May 2021, Plaintiff wrote her provider that she "can't take the pain anymore" and "both [of her] knees are so swollen [she] cannot straighten [her] legs." (AR 1980.) She continued: "Both my back and neck have gotten worse but I can deal with that pain, but when you add the knees into the mix it's unbearable." (AR 1980.) The provider noted that Plaintiff requested another cortisone shot in her knees, having already received one in November 2020, and that she was "[n]ot ready for surgery yet." (AR 1986.) She was assessed with arthritis of her knees bilaterally. (AR 1986.) Plaintiff was provided a one-point walking cane in June 2021. (AR 2813.)

**B.     Plaintiff's Statement**

In March 2019, Plaintiff completed an "Adult Function Report." (AR 268–75.) Plaintiff stated that she lives in a house with her husband and son. (AR 268.) She described her disabling symptoms as preventing her for sitting or standing for any length of time and that she needs multiple breaks. (AR 268.) When asked what kinds of things she does on an average day, Plaintiff responded that she takes medication, lies down to watch television until the medications start to work, does dishes, goes to her daughter's house to lie down and watch television, takes more medication, lies down, feeds her dogs and cooks dinner, lies down to watch television again, takes more medication, and then goes to bed. (AR 269.) She has no problem handling her personal care. (AR 269.) Plaintiff reported that she cooks "easy meals" daily that take her 20 minutes to prepare. (AR 270.) She does light cleaning about three times a week for 20 minutes at a time before needing to take a break. (AR 270.) Plaintiff reports she can drive a car and does "light" grocery shopping in a store for 20 minutes. (AR 271.) She cannot visit out of town family due to pain from travel. (AR 273.) According to

4

Plaintiff, she can walk a half a block before stopping to rest for 10 minutes. (AR 273.) She uses a cane "often." (AR 274.)

### C. Administrative Proceedings

The Commissioner denied Plaintiff's applications for benefits initially on June 7, 2019, and again on reconsideration on August 8, 2019. (AR 19, 108–112, 115–120.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 121–72.) At the hearing on April 16, 2021, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 37–55.)

#### 1. Plaintiff's Testimony

Plaintiff testified that she was fired from her hospital job in 2018 because she was unable to focus due to pain in her arms, neck, and back. (AR 44.) She stated on some days she cannot get out of bed due to the "debilitating" pain, and if she does get out of bed she is "on the couch." (AR 45.) She started using a cane in approximately 2017 or 2018, and uses it when she leaves the house to help take weight off her right side. (AR 47, 48.) Plaintiff testified that she can walk about 75 feet before needing to stop and rest, and can stand for 15 to 20 minutes at a time. (AR 48, 49.) She can sit on her couch for 30 minutes before needing to lie down. (AR 49.) Plaintiff lies down for 98 percent of the day. (AR 49.) She testified that she suffers from "bad days," where she stays in bed, between six and nine days per month. (AR 50.) The rest of time she lies on the couch in the living room. (AR 50.) According to Plaintiff, her husband takes care of all the chores and shopping. (AR 50–51.) Plaintiff drives to visit her daughter and granddaughter, but testified that she lies down when there. (AR 51.) According to Plaintiff, side effects from the medications she takes include "brain fog," drowsiness, intermittent constipation, and diarrhea. (AR 46.)

#### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a surgical scheduler, Dictionary of Operational Titles (DOT) code 238.367-022, with a specific vocational preparation (SVP)[3] of 4 and heavy and light exertional levels; and as a medical record clerk, DOT

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in

245.362-010, with an SVP 4 and light exertional level. (AR 55.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 55–56.) The VE was also to assume that this individual would be limited to lifting 20 pounds occasionally, ten pounds frequently; and carrying 20 pounds occasionally, ten pounds frequently. (AR 56.) The hypothetical individual could sit for six hours in an eight-hour day; could stand for six hours of an eight-hour day; and could walk for six hours of an eight-hour day. (AR 56.) The individual could climb ramps and stairs occasionally; climb ladders, ropes, or scaffolds occasionally; and could occasionally balance, stoop, kneel, crouch, and crawl. (AR 56.) The individual should avoid concentrated exposure to unprotected heights; avoid concentrated exposure to moving mechanical parts; avoid even moderate exposure to humidity and wetness; avoid even moderate exposure to dust, odors, fumes, and pulmonary irritants; and should avoid even moderate exposure to extreme cold. (AR 56.) The VE testified that such a person could perform Plaintiff's past work. (AR 56.) The VE further testified that such a person could perform other sedentary jobs in the national economy, such as information clerk, DOT code 237.367-022 and an SVP 4; appointment clerk, DOT 237.367-010 and SVP 3; and data examination clerk, DOT code 237.367-010 and an SVP 3. (AR 57.)

   The ALJ asked the VE to consider another hypothetical person who would be limited to lifting ten pounds occasionally, less than ten pounds frequently; carrying ten pounds occasionally and carrying less than ten pounds frequently. (AR 57–58.) The individual could sit for six hours of an eight-hour day; could stand for two hours of an eight-hour day; and could walk for two hours of an eight-hour day. (AR 58.) The individual could climb ramps and stairs occasionally but never climb ladders, ropes or scaffolds and could occasionally balance, stoop, kneel, crouch, and crawl. (AR 58.) The individual should avoid even moderate exposure to unprotected heights; avoid even moderate exposure to moving mechanical parts; avoid even moderate exposure to humidity and wetness; avoid even moderate exposure to dust, odors, fumes, and pulmonary irritants; and should avoid even moderate exposure to extreme cold. (AR 58.) The individual would further be limited to jobs that could be performed using a handheld assistive device when ambulating. (AR 58.) The

---

the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

VE testified that such a person could perform Plaintiff's past work of surgery scheduler as she performed during the last three years of her career, but could not perform the past job of medical records clerk. (AR 58–59.) According to the VE, the alternative occupations would still be available. (AR 59.) The VE further testified that being off task more than 15% of the workday, or missing two or more days of work per month, is work preclusive. (AR 59–60.)

**D.    The ALJ's Decision**

In a decision dated July 28, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 19–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 21–28.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since December 4, 2018, the alleged onset date (step one), finding that Plaintiff "worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity." (AR 21.) At step two, the ALJ found Plaintiff's following impairments to be severe: obesity; adenocarcinoma of the right lung, status/post lobectomy; degenerative disc disease of the thoracic spine, status/post hemilaminectomy, decompression and interbody fusion; degenerative disc disease of the cervical spine status/post anterior cervical decompression and fusion; degenerative disc disease of the lumbar spine; and degenerative joint disease of the knees. (AR 21–23.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 23–24.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

7

determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 [§] CFR 404.1567(a) in that she can lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently; she can sit 6 hours in a typical 8-hour workday; she can stand and/or walk 2 hours in an 8-hour workday; and she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She can never climb ladders, ropes or scaffolds; and she must avoid even moderate exposure to unprotected heights, moving mechanical parts, humidity, wetness, extreme cold and dust, odors, fumes and pulmonary irritants. In addition, she is limited to jobs that can be performed using a hand-held device when ambulating.

(AR 24–27.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause a number of symptoms she has [,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely supported by the available evidence as a whole." (AR 25–26.)

The ALJ determined that, given her RFC, Plaintiff was not disabled because she was able to perform her past relevant work of surgery scheduler as generally performed (step four). (AR 27–28.) The ALJ concluded Plaintiff was not disabled from December 4, 2018, through the date of their decision. (AR 28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 15, 2021. (AR 5–10.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD
**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.    DISCUSSION**

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints. (Doc. 21 at 14–19; Doc. 23 at 1–8.) The Acting Commissioner responds that the ALJ properly relied on evidence in the record that

undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 22 at 4–14.) The Court agrees with Plaintiff that the ALJ erred in the evaluation of Plaintiff's testimony and will remand the case on that basis.

**A.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General

---

[5] The Court disagrees with the Acting Commissioner that a lesser legal standard applies. (*See* Doc. 22 at 6 n.2.)

findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

**B.     Analysis**

   **1.     The ALJ Erred in Discounting Plaintiff's Subjective Complaints**

Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause a number of symptoms she has [,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely supported by the available evidence as a whole." (AR 25–26.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "as "not entirely supported by the available evidence as a whole." (AR 26.). Because the ALJ did not make any finding of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom allegations. *Vasquez*, 572 F.3d at 591.

In discrediting Plaintiff's statements, the ALJ pointed to "some inconsistencies" in the record. (AR 26.) Specifically, the ALJ noted that the objective medical evidence showed Plaintiff "is able to walk with a hand-held assistive device" and her "treating physicians indicate she does not yet require knee surgery." (AR 26.) The ALJ also pointed to Plaintiff's testimony that she "has the ability to drive when needed and regularly visits her daughter and granddaughter" and the fact that her "earnings records show earnings since her alleged disability onset, albeit below the level of [substantial gainful activity]." (AR 26.)

The foregoing is the entire subjective symptom discussion, and it is insufficient. The ALJ does not specify which of Plaintiff's statements they found to be less than credible and why these "inconsistencies" undermine that testimony. For example, it is not clear to the Court why a lack of need for knee surgery bears any relation to Plaintiff's complaints of pain in her arms, neck, and back (*see* AR 44). Such a nexus is required because, without that specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence—which the Court may not do. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494–95 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear and convincing reasons for

rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.") (emphasis in original). *See also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that we may not "take a general finding—an unspecified conflict between [c]laimant's testimony . . . and her reports to doctors—and comb the administrative record to find specific conflicts"). While the Ninth Circuit does not "require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits," the ALJ must do more than what was done here, which consisted of "offering non-specific conclusions" that Plaintiff's credibility was diminished by a few "inconsistencies" in the record. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Moreover, some of the noted "inconsistencies" are not nearly as inconsistent as the ALJ claims. For example, the fact that Plaintiff uses a cane to ambulate—which she freely admits (*see* AR 47, 48, 274)—does not necessarily cast doubt on Plaintiff's testimony that she is limited to walking 10 minutes at a time while using that cane (*see* AR 47, 48, 274, 503). Similarly, Plaintiff's testimony that she drives to visit her daughter and granddaughter appears consistent with her subjective complaints, when one considers that she lies down during the visit (*see* AR 51, 269). Finally, as the Acting Commissioner concedes (*see* Doc. 22 at 9–10), Plaintiff's "earnings since her alleged disability onset" were not "earnings" at all, but instead designated in the record as "unemployment insurance."[6] (*See* AR 246.)

The Acting Commissioner points to statements made by the ALJ in the summation of the medical evidence supporting the RFC determination, and contends the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony beyond the inconsistencies they noted.

---

[6] Though receipt of unemployment benefits is not dispositive of a person's capacity to perform work, it can conflict with assertions of an inability to work if the receipt of unemployment benefits was premised on an individual's attestation that they were ready, willing, and able to work. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ validly discounted claimant's credibility, in part, because he "received unemployment insurance benefits [after being laid off] (apparently considering himself capable of work and holding himself out as available for work)"). The problem here, however, is that the ALJ did not explain whether the designated "unemployment insurance" was related to Plaintiff's last employment, pandemic assistance, or otherwise, and further did not specify *which* testimony was called into question by the receipt of such payments.

(*See* Doc. 22 at 10–13.)  The Ninth Circuit has explained, however, that "summariz[ing] the medical evidence supporting [the] RFC determination . . . is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to . . . ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter*, 806 F.3d at 494.  Thus, "the observations an ALJ makes as part of the summary of the medical record are *not* sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility.  Instead, the ALJ must *link* the medical evidence at issue to the Plaintiff's testimony." *Argueta v. Colvin*, No. 1:15–cv–01110–SKO, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (citations omitted, emphasis in the original).

As set forth above, the ALJ did not specifically identify which portions of Plaintiff's testimony conflicted with the parts of the record they noted and how.  Because this Court's review is limited to the rationale provided by the ALJ, the post-hoc rationalizations and inferences advanced by the Acting Commissioner cannot justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

### 2.     The ALJ's Error Was Not Harmless

The Court now turns to the analysis of whether this error by the ALJ was harmless.  The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record).  As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the

agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'") (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive―'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

The record establishes that the ALJ's error was not harmless. If the ALJ had credited Plaintiff's physical symptom statements regarding certain functional abilities and included appropriate limitations in the RFC, the disability determination may have changed, especially given that Plaintiff alleged fairly significant limitations, including an inability to sit for longer than 30 minutes before needing to lie down. (AR 49. See also AR 59–60 (VE testimony that being off task more than 15% of the workday, or missing two or more days of work per month, is work preclusive.) Thus, the error was not "inconsequential to the ultimate nondisability determination," *Molina*, 674 F.3d at 1115, and was not harmless.

### 3. The ALJ's Error Warrants Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not

been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds, and Plaintiff concedes (*see* Doc. 21 at 20; Doc. 23 at 9), that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes its evaluation of Plaintiff's subjective complaints, any warranted additional limitations should be incorporated in the RFC. Conversely, there may be clear and convincing reasons the ALJ can offer for discounting the testimony. *See Voisard v. Berryhill*, No. 2:17–CV–1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Plaintiff's symptom statements and adjust their RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because she has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

On remand, the ALJ should reevaluate Plaintiff's symptom testimony and address any necessary changes to the RFC determination. If the ALJ again discounts Plaintiff's subjective symptoms, they can then provide an adequate discussion of the specific testimony they are discounting and the specific evidence that contradicts that testimony. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ must also reevaluate their conclusions at steps four and five of the disability determination in light of any changes to Plaintiff's RFC.

### V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for

further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Vicki Colleen Nelson and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

| Dated: **July 13, 2023** | /s/ *Sheila K. Oberto* |
|---|---|
| | UNITED STATES MAGISTRATE JUDGE |